# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**  
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700  
PORTLAND, OREGON 97204  
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK  
BETHANY COLEMAN-FIRE, LAW CLERK

TRANSMITTED VIA ECF

December 10, 2012

Richard A. Mario  
Buckley Law, P.C.  
5300 Meadows Road, Suite 200  
Lake Oswego, OR  97035

Steven C. Burke  
Case & Dusterhoff, LLP  
9800 SW Beaverton Hillsdale Hwy, Suite 200  
Beaverton, OR  97005

    Re:  <u>Emerson Street, LLC</u>, Case No. 09-34627-elp11  
           Motion for Sanctions for Violation of Discharge  
           Injunction

Dear Counsel:

    The issues remaining on this Motion for Sanctions are (1) whether debtor should be required to perform certain repairs to the basement of the subject property to inhibit the intrusion of moisture and water into the basement; and (2) whether creditor 30th and Emerson, LLC ("creditor") is entitled to an injunction requiring those repairs.  The purpose of this letter is to give you my ruling on those issues.

    The court held a hearing on November 19 at which the parties presented evidence about the condition of the basement as well as its condition at the time it was purchased by debtor.  The building was constructed around 1912.

    Creditor provided a Preliminary Observation Report written by Greg Mockford, a forensic architect, who visited the property on July 20, 2012.  His report, Exh. 1, described the basement as consistent with concrete basements constructed in the early 1900's.  The basement had "tree, bush and various vegetation roots finding cracks in the concrete walls through to the interior where they are spreading out across the walls like a vine would grow up a trellis."  He reported that he

> found no reason to suspect that the roots growing into the
> basement was a new phenomenon as it is likely they found

Richard A. Mario
Steven C. Burke
December 10, 2012
Page 2

      their way into the basement decades ago.  It is likely that
      they have been not growing at a significant rate.

Exh. 1 p.1.  He reported that the walls likely "appear much like they did back in the early 1900's (without the roots)."  <u>Id.</u> at p.2.  Finally, he said that, "[a]lthough the roots may have been growing into the basement over a long period of time, the growth rate was not significant nor have they been causing any major damage."  <u>Id.</u>

    Nonetheless, Mockford recommended certain repairs, including spraying the roots with herbicide and stripping them off the walls, filling in cracks in the concrete, applying a water sealant to the walls, and fixing a gap that existed between the concrete and the wood framed walls.

    Mockford testified that, when he visited the property, the basement was damp and there was some water on the floor.  He opined that either the vegetative matter or the gap between the foundation and the walls could be the source of moisture.  He did not observe any current structural issues for the basement, although he did testify that the walls could deteriorate if the leaks were not repaired.  The repairs that he recommended would not provide 100 percent waterproofing.

    Creditor also presented testimony that, during the period it owned the property before it was purchased by debtor, the basement was used for storage of papers.

    Debtor's witness, Magnus Johannesson, one of debtor's partners, testified that the basement is in substantially the same condition as when debtor acquired it in 2004.  At that time, the basement ceiling was wet and moldy.  Debtor removed sheet rock from the ceiling to get rid of the mold.  The roots have been removed from the basement walls.  Johannesson also testified that, shortly before Mockford's inspection in July 2012, the area had highly unusual rainfall.

    From the evidence, I find that the basement walls are in substantially the same condition as they were when debtor purchased the property, and that although the presence of moisture in the basement could, over a number of years, make the walls deteriorate, there is no threat to the quality or value of the building at this time.

Richard A. Mario
Steven C. Burke
December 10, 2012
Page 3

Creditor argues that the condition of the basement walls and the gap between the concrete walls and the wood walls allows water to intrude into the basement, thereby damaging the property. Allowing these conditions to continue, it argues, violates the terms of the trust deed, which requires the buyer to "protect, preserve and maintain the property in good condition and repair; not to remove or demolish any building or improvement thereon; not to commit or permit any waste of the property." Exh. 2 p.1. Debtor argues that the condition of the basement is essentially the same as it was when debtor purchased the property, and that the current condition is not threatening the value of creditor's collateral.

The Oregon Court of Appeals has considered a provision in a land sale contract that required the purchaser to "[k]eep all improvements . . . in good condition and repair and not permit any waste or removal thereof." Whistler v. Hyder, 129 Or. App. 344, 348 (1994). The court noted that the contract provisions were in the conjunctive, but said that it was apparent from looking at the context of the language "that the provisions are intended to maintain the condition of the improvements so that defendant will be restored to property that has retained its value in the event of a forfeiture." Id.

The court explained that the duty to keep improvements in good condition is part of the implied "duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties." Id. "The effect of the provision that plaintiffs maintain the property in good condition and repair is to require them to maintain the property in the condition as it existed when they purchased the property[.]" Id. at 350.

Waste, the court explained, "occurs when the person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of the legal interests in it." Id. at 349.

Both requirements, then, were part of the obligation to maintain the condition of the property so that, if the creditor forecloses, the creditor can be restored to property that has retained its value.

     In this case, the trust deed provides that the obligation to protect, preserve and maintain the property in good condition and not to commit waste is "[t]o protect the security of this trust deed[.]" Exh. 2 p.1. As in Whistler, it is apparent that the two duties, maintenance and prevention of waste, are intended to protect the value of the collateral, so that it retains its value in the event of a foreclosure.

     The evidence presented at the hearing did not establish that the condition of the building was threatening the value of creditor's collateral. Although moisture was getting into the basement, I agree with debtor that this is not an unusual occurrence in Portland, particularly for a building that was built in the early 1900s. Creditor did not establish that the intrusion of moisture was either threatening the integrity of the building in the near future (if at all), or that it was causing the building to lose value. Given Mockford's statement in his report that the roots had likely found their way into the basement decades ago and Johannesson's testimony that the roots were exposed when debtor purchased the property, I conclude that the root problem existed when debtor bought the property, and their existence does not demonstrate any deterioration in the condition of the property.

     Because I conclude that the condition of the basement is essentially the same as it was when debtor purchased it and is not causing a reduction in the value of creditor's collateral, debtor is not required to do the remediation recommended in the Mockford report. As a consequence, even if there were a request for injunction properly before the court, I would deny the request for injunction.

     At the November 19, 2012, hearing, I ruled that the parties should obtain a determination from the City of Portland regarding whether debtor is required to replace the basement firewall. Debtor should advise the court of the City's determination within 14 days after notice from the City. At that point, I will rule on debtor's request for attorney fees and costs and finally resolve this Motion for Sanctions.

                               Very truly yours,

                               ELIZABETH L. PERRIS

Richard A. Mario
Steven C. Burke
December 10, 2012
Page 5

              Bankruptcy Judge